FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 17, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HARLIE M., | No. 2:21-CV-00035-RHW |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ECF No. 13, 14 |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney Christopher H. Dellert represents Harlie M. (Plaintiff); Special Assistant United States Attorney Joseph J. Langkamer represents the Commissioner of Social Security (Defendant). This matter was referred to the undersigned judicial officer on February 10, 2023. ECF No. 25. After reviewing the administrative record and the briefs filed by the parties, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied.

## JURISDICTION

On December 13, 2016, Plaintiff filed an application for Supplemental Security Income alleging disability since birth[1] due to bipolar disorder, anxiety, PTSD, anorexia, nausea, learning disorder, depression, sleeping disorder, extreme

---

[1] The disability onset date was changed to the date of application, December 13, 2016, at the time of the administrative hearing. Tr. 41.

REPORT AND RECOMMENDATION - 1

daytime fatigue, and paranoia. Tr. 163, 178. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Raymond L. Souza held a hearing on December 19, 2018, Tr. 34-59, and issued an unfavorable decision on February 27, 2019, Tr. 19-29. The Appeals Council denied Plaintiff's request for review on December 30, 2019. Tr. 5-10. The ALJ's February 2019 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on January 15, 2021. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was 20 years old on the disability application date, December 13, 2016. Tr. 163. She completed school through the 12th grade. Tr. 179. Plaintiff's disability report indicates she had never worked and believed her condition became severe enough to prevent her from working at birth. Tr. 178-179. Plaintiff testified at the administrative hearing that she suffered from PTSD from childhood trauma (nightmares and flashbacks) and anxiety. Tr. 42-44. She described high anxiety days, triggered by nightmares, that could cause her to stay in bed all day. Tr. 46-47. She stated she had these bad days approximately three out of four weeks per month, Tr. 47-48, and would thus not be able to work an eight hour a day, five day a week job, Tr. 51-52.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at

1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. § 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work, the claimant will be found disabled.  20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 27, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 13, 2016, the disability application date. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: eating disorder, post-traumatic stress disorder (PTSD), depression and anxiety. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21. The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: she could not use hazardous machinery and could have no exposure to unprotected heights; she was able to remember, understand, and carry out simple and routine instructions and tasks consistent with SVP level 1 and 2 type jobs; she could have only occasional changes in the work setting; and she could have occasional interaction with the general public, coworkers, and supervisors. Tr. 23.

At step four, the ALJ indicated Plaintiff had no past relevant work. Tr. 27.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of hand packager, laundry laborer, and hospital cleaner. Tr. 27-28.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 13, 2016, the date the disability application was filed, through the date of the ALJ's decision, February 27, 2019. Tr. 28-29.

REPORT AND RECOMMENDATION - 4

# ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff asserts the issues before the Court are whether the ALJ erred: (1) in his weighing of the medical opinion evidence relating to Plaintiff's mental impairments; and (2) in his consideration of Plaintiff's allegations about the severity and functional impact of her impairments. ECF No. 13 at 2.

# DISCUSSION

**A.     Plaintiff's Subjective Complaints**

Plaintiff challenges the ALJ's rejection of her subjective allegations. ECF No. 13 at 9-17. Defendant responds that the ALJ reasonably found Plaintiff's subjective complaints conflicted with Plaintiff's medical records and activity level. ECF No. 14 at 4-8.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 24.

The ALJ first determined Plaintiff's allegations of disabling mental impairments were not consistent with the objective medical evidence. Tr. 24-26.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006).

The ALJ noted Plaintiff had longstanding mental health impairments but had been successfully treated with counseling and medication. Tr. 24-26. Medical records from prior to the disability application date indicate she was doing well on medications.[2] *See* Tr. 239 (January 2016); 242 (July 2016). On March 23, 2017, Patricia Kraft, Ph.D., reviewed the record and opined that Plaintiff was capable of maintaining concentration, persistence and pace for a normal 8-hour workday and 40-hour workweek; capable of working in an environment with occasional superficial public contact and occasional non-cooperative contact with coworkers; capable of accepting and responding appropriately to criticism from supervisors; and capable of adapting to normal and routine changes in a workplace. Tr. 69-71. A March 2017 medical report indicates Plaintiff reported the situational stressor of her father who had abused her in the past getting released from prison, but notes Plaintiff had friends who supported her and that she was able to function, do yoga, and complete chores. Tr. 24, 293. In May 2017, Plaintiff reported to a medical provider that she was "[a] lot better," that "[a] lot of good stuff ha[d] happened," she was doing some cleaning jobs with friends to earn money, and she would be

---

[2] Evidence that predates the relevant time period can be deemed useful as background information; however, it is irrelevant to the extent that it does not address claimant's medical status during the relevant period at issue in this action. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical opinions that predate the alleged onset of disability are of limited relevance).

REPORT AND RECOMMENDATION - 6

starting as a volunteer at the text crisis line. Tr. 306. The Court finds it important to note that although Plaintiff indicated in May 2017 that she had experienced some anxiety/stress and even had a panic attack while performing the cleaning jobs, Tr. 306, Plaintiff did not report that she had to stop working as a result of these symptoms. Records reflect there was no mental status concerns noted by her counselor over the next few months. Tr. 25, 306-401. On July 25, 2017, Plaintiff's counselor indicated Plaintiff was feeling better and was helping her boyfriend with his work. Tr. 25, 401.

On August 17, 2017, Plaintiff underwent a psychiatric consultative evaluation with Annabell Simpson, M.D. Tr. 402-406. Dr. Simpson determined Plaintiff would have no difficulty performing simple and repetitive tasks, performing detailed and complex tasks, accepting instructions from supervisors, or performing work activities on a consistent basis without special or additional instructions. Tr. 26, 405. Dr. Simpson noted, secondary to observed hypervigilant and hyperarousal behavior, Plaintiff would have "some difficulty" interacting with coworkers and supervisors, in attending regular attendance and completing a normal workday/workweek without interruptions from a psychiatric condition, and in dealing with usual stress encountered in the workplace. Tr. 405-406.

On September 14, 2017, state agency reviewer Edward Beaty, Ph.D., determined that Plaintiff could perform simple, detailed and complex tasks and, while she may have some limitations in her concentration, persistence and pace, she would still be able to sustain tasks in a 40-hour workweek. Tr. 26, 86.

Plaintiff reported ongoing mental health symptoms to her counselor throughout the remainder of 2017, but her counselor continued to check a box on her reports to indicate there was no mental health concerns. Tr. 25, 714-724. A December 2017 doctor note states Plaintiff reported she was doing well, sleeping well, exercising regularly, and trying to get pregnant. Tr. 25, 459.

///

REPORT AND RECOMMENDATION - 7

   As noted by the ALJ, Tr. 25, medical records show no significant change in Plaintiff's condition in 2018; Plaintiff reported some situational stressors but noted improved relationships with her family and spending time with her boyfriend, and Plaintiff's counselor continued to check a box on the reports to indicate there was no mental status concerns, Tr. 725-753. A June 2018 doctor note indicates Plaintiff had continued to work cleaning houses, Tr. 25, 542, and her ability to perform light housecleaning for work was again noted in August 2018, Tr. 552. A September 2018 doctor report states Plaintiff was "in a better place now with her mood." Tr. 25, 554-556. In December 2018, Plaintiff's counselor noted that Plaintiff reported she was four weeks pregnant and happy. Tr. 26, 734.

   Based on the foregoing, the Court finds substantial evidence supports the ALJ's conclusion that the weight of the objective medical evidence of record shows Plaintiff was not as limited as she has alleged in this case.

   The ALJ also found Plaintiff reported improvement in her mental health symptoms with therapy and medication. Tr. 24-26. An ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving symptoms can undermine a claim of disability); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling). As indicated by the ALJ, Tr. 24-26, the record reflects Plaintiff reported her symptoms improved with therapy and medications, *see* Tr. 293, 306 ("A lot better"), 401 ("[she] is feeling better"), 555 ("in a better place now with her mood"), 722 ("anxiety is getting better"), 724 ("doing well w/ less anxiety attacks"). Accordingly, the Court finds the evidence of record supports the ALJ's finding that Plaintiff's symptoms improved with therapy and medication.

The ALJ also noted Plaintiff's documented activities during the relevant time period did not support her allegation of total disability. Tr. 24-26.

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that a claimant's activities "contradict claims of a totally debilitating impairment." *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *Id*. at 1112-1113 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair*, 885 F.2d at 603)).

Here, the ALJ mentioned Plaintiff's May 2017 report to a medical provider that she was getting out more, had attended her boyfriend's softball games, was doing some cleaning jobs with friends to earn money, and would be starting as a volunteer at the text crisis line (Tr. 306); July 2017 report that Plaintiff was helping her boyfriend with his work (Tr. 401); October 2017 report that she was getting out and enjoyed spending time with friends (Tr. 454); December 2017 report that she was doing well, sleeping well, exercising regularly, and trying to get pregnant (Tr. 459); March 2018 report that she was going on a trip to Texas where she planned to see old friends from school (Tr. 748); and June 2018 report that she was working cleaning houses (Tr. 542). Tr. 24-25. The ALJ summarized that Plaintiff, contrary to the degree of limitation alleged, was able to spend time with friends

and her boyfriend, reports an ability to clean for pay, tends to her personal care and grooming as well as does household chores, goes to movies, watches her boyfriend's softball games, and made plans to have a baby.³ Tr. 26. While Plaintiff contends it was error for the ALJ to reject Plaintiff's testimony based on her daily activities because mental health symptoms wax and wane in the course of treatment, ECF No. 13 at 15 citing *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017), Plaintiff's hearing testimony, inconsistent with the activities described above, indicated she experienced high anxiety days, which caused her to stay in bed all day, three out of four weeks per month, Tr. 46-48.

      The Court finds it was reasonable for the ALJ to have determined that Plaintiff's activities as reflected in the record were inconsistent with her allegations of totally debilitating symptoms three out of four weeks per month and thus detracted from her overall credibility.

      The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for finding Plaintiff's symptom allegations were not entirely credible in this case.

---

      ³The Court notes a June 2018 report indicates Plaintiff had been drinking to excess, Tr. 542, and a July follow up appointment report indicates Plaintiff "got in a fight at a bar and punch[ed] someone," Tr. 545, 546. This reflects that Plaintiff was able to leave her residence if she wished during the relevant time period.

REPORT AND RECOMMENDATION - 10

**B.       Medical Opinion Evidence**

Plaintiff asserts the ALJ also erred by failing to properly consider the medical opinion evidence of record. ECF No. 13 at 5-9. Plaintiff specifically contends the ALJ erred by failing to provide germane reasons for discounting the opinions of Heidi Whitney, LMHC. *Id*. Defendant responds the ALJ reasonably weighed the medical opinions of record and provided germane reasons for discounting the opinions of Ms. Whitney. ECF No. 14 at 8-12.

For disability applications filed prior to March 27, 2017, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians), and those who neither examine nor treat the claimant (nonexamining or reviewing physicians). *Lester*, 81 F.3d at 830. A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. Moreover, the opinion of an acceptable medical source is given more weight than that of an "other source." *See Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, counselors, teachers, social workers, spouses and other non-medical sources. The ALJ is required to provide germane reasons for discounting "other source" opinions. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Nurse practitioners and therapists are considered other sources. While their opinions must still be evaluated, an ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so.").

The ALJ determined Plaintiff could perform a full range of work at all exertional levels with the following nonexertional limitations: she cannot use hazardous machinery and can have no exposure to unprotected heights; she is able

REPORT AND RECOMMENDATION - 11

to remember, understand, and carry out simple and routine instructions and tasks consistent with SVP level 1 and 2 type jobs; she can have only occasional changes in the work setting; and she can have occasional interaction with the general public, coworkers, and supervisors. Tr. 23. In making this RFC determination, the ALJ relied on the acceptable medical source opinions of two state agency reviewing medical consultants and medical examiner Simpson, as well as a multitude of treatment notes in the record. Tr. 26-27. The ALJ, however, discounted a January 19, 2017 Mental Source Statement form completed by an "other source," Ms. Whitney. Tr. 27.

Ms. Whitney, Plaintiff's counselor, filled out a Mental Source Statement form on January 19, 2017, which found Plaintiff was markedly and severely limited in multiple areas of functioning. Tr. 232-233. Ms. Whitney also checked boxes on the form indicating Plaintiff had "extreme" restrictions of activities of daily living and "extreme" difficulties in maintaining social functioning. Tr. 234.

In according "little weight" to the opinions of Ms. Whitney on the Mental Source Statement form, the ALJ concluded it was internally inconsistent, appeared to be based largely on Plaintiff's subjective complaints, was inconsistent with Ms. Whitney's counseling notes, and was inconsistent with Plaintiff's longitudinal history. Tr. 27.

As correctly determined by the ALJ, Ms. Whitney's opinions on the Mental Source Statement assessment are inconsistent with Ms. Whitney's treatment notes. The marked, severe, and extreme limitations noted on the form contrast with Ms. Whitney's notes which constantly reflected there was no mental health concerns and specifically indicated Plaintiff's symptoms improved with therapy. *See* Tr. 401 ("[she] is feeling better"), 722 ("anxiety is getting better"), 724 ("doing well w/ less anxiety attacks").

Ms. Whitney's opinions on the Mental Source Statement form are also not consistent with the overall medical evidence of record. In addition to multiple

REPORT AND RECOMMENDATION - 12

medical notes showing Plaintiff had a normal mood (despite some anxiety), was fully oriented, made good eye contact, behaved and spoke normally, and exhibited normal thought process and content, the opinions of acceptable medical sources of record (state agency reviewers Kraft and Beaty and medical examiner Simpson) do not support the significant limitations noted by Ms. Whitney on the Mental Source Statement form.

On March 23, 2017, Dr. Kraft opined that Plaintiff was capable of maintaining concentration, persistence and pace for a normal 8-hour workday and 40-hour workweek; capable of working in an environment with occasional superficial public contact and occasional non-cooperative contact with coworkers; capable of accepting and responding appropriately to criticism from supervisors; and capable of adapting to normal and routine changes in a workplace. Tr. 69-71. On September 14, 2017, Dr. Beaty determined that Plaintiff could perform simple, detailed and complex tasks and, while she may have some limitations in her concentration, persistence and pace, she would be able to sustain tasks in a 40-hour workweek. Tr. 86.

The ALJ accorded "great weight" to the opinions of the reviewing medical professionals and indicated he accommodated their findings in his RFC determination by limiting Plaintiff to SVP 1 and 2 type tasks and limiting her to only occasional coworker, supervisor, and public contact. Tr. 26. Plaintiff's briefing does not contest the opinions of state agency reviewers Kraft and Beaty.[4]

On August 17, 2017, Dr. Simpson examined Plaintiff and found she would have no difficulty performing simple and repetitive tasks, performing detailed and

---

[4]The Court ordinarily will not consider matters on appeal that are not specifically challenged in an opening brief. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 13

complex tasks, accepting instructions from supervisors, or performing work activities on a consistent basis without special or additional instructions. Tr. 26, 405. Dr. Simpson noted, secondary to observed hypervigilant and hyperarousal behavior, Plaintiff would have "some difficulty" interacting with coworkers and supervisors, in attending regular attendance and completing a normal workday/workweek without interruptions from a psychiatric condition, and in dealing with usual stress encountered in the workplace.[5] Tr. 405-406.

      The ALJ gave some weight to the opinions of Dr. Simpson finding they were generally supported by Plaintiff's largely normal exam findings showing Plaintiff to be alert and oriented with an estimated average intelligence and intact insight and judgment. Tr. 26-27. Although Plaintiff mentions Dr. Simpson's opinion in her opening brief, ECF No. 13 at 6-7, she does not specifically challenge the ALJ's assessment of that opinion. *See Carmickle*, 533 F.3d at 1161 n.2; *Paladin Assocs., Inc.*, 328 F.3d at 1164.

      The ALJ also appropriately concluded that the significant limitations noted on the Mental Source Statement form were inconsistent with Plaintiff's reported activities. While Ms. Whitney opined that Plaintiff had "extreme" restrictions of activities of daily living and "extreme" difficulties in maintaining social functioning, Tr. 234, the record reflects that Plaintiff was getting out, had attended her boyfriend's softball games, was doing some cleaning jobs with friends to earn money, and would be starting as a volunteer at the text crisis line (Tr. 306); she was helping her boyfriend with his work (Tr. 401); she was getting out and enjoyed spending time with friends (Tr. 454); she was doing well, sleeping well, exercising

---

[5] The ALJ noted these findings by Dr. Simpson were "somewhat vague," but nevertheless accounted for the opined limitations in his RFC determination by restricting Plaintiff to occasional contact with others, only occasional changes in the work setting, and work consistent with SVP 1 and 2 jobs. *See* Tr. 26-27.

REPORT AND RECOMMENDATION - 14

regularly, and trying to get pregnant (Tr. 459); she was going on a trip to Texas where she planned to see old friends (Tr. 748); and she was working cleaning houses (Tr. 542). Tr. 24-25.

Based on the forgoing, the Court finds the ALJ provided germane reasons, supported by the record, for according little weight to the "other source" opinions of Ms. Whitney.[6]

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of error. Accordingly, **IT IS HEREBY RECOMMENDED** Defendant's Motion for Summary Judgment, **ECF No. 14**, be **GRANTED**; Plaintiff's Motion for Summary Judgment, **ECF No. 13**, be **DENIED**; and the District Court Executive enter **Judgment for DEFENDANT and CLOSE the file**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which

---

[6] While it is debatable whether the other reasons provided by the ALJ for discounting Ms. Whitney's Mental Source Statement form (internal inconsistencies and based primarily on Plaintiff's subjective reporting) lack support, the Court need not address these other reasons as the ALJ provided adequate germane reasons, supported by the record, for according little weight to Ms. Whitney's opinions. *See Carmickle*, 533 F.3d at 1162-1163 (a reviewing court must uphold an ALJ's decision, even if there are errors, so long as substantial evidence supports it); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result).

objection is being made, and the basis therefor.  Any response to the objection shall be filed within fourteen (14) days after receipt of the objection.  Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(3); Local Magistrate Judge Rules for the Eastern District of Washington Rule 2.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to counsel.

DATED May 17, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 16